IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RUSSELL W. TOWLES                                                          PLAINTIFF

v.                          CIVIL NO. 06-2016

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                    DEFENDANT

## MEMORANDUM OPINION

Plaintiff Russell W. Towles brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).

**Procedural Background:**

Plaintiff protectively filed DIB and SSI applications on March 23, 2004, alleging an inability to work since January 28, 2003. (Tr. 69-71). Plaintiff's applications were denied initially and on reconsideration. (Tr. 22-29). Pursuant to plaintiff's request, a hearing de novo before an administrative law judge (ALJ) was held on October 13, 2005, at which plaintiff, represented by counsel, appeared and testified. (Tr. 208-232).

By written decision dated October 25, 2005, the ALJ found that, plaintiff had an impairment or combination of impairments that were severe. (Tr. 12). However, after reviewing all of the evidence presented, he determined that plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix

I, Subpart P, Regulation No. 4. (Tr. 13). The ALJ found that plaintiff retained the residual functional capacity (RFC) to perform the exertional requirements of light work. (Tr. 14). Specifically he found plaintiff could lift and/or carry ten pounds frequently, twenty pounds occasionally; to push and pull ten pounds frequently, twenty pounds occasionally; to stand and/or walk six hours out of an eight-hour workday; to sit six hours out of an eight-hour workday; and to occasionally climb, balance, stoop, crouch, kneel and crawl. (Tr. 221). The ALJ also found plaintiff can understand, remember and carry out only simple, not detailed or complex, instructions. (Tr. 14). With the help of vocational expert testimony, the ALJ found plaintiff could perform his past relevant work as a maintenance worker and an unarmed security guard. (Tr. 17).

Plaintiff appealed the decision of the ALJ to the Appeals Council. The Appeals Council denied plaintiff's request for review of the hearing decision on January 12, 2006. (Tr. 2-4). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties submitted appeal briefs and this case is before the undersigned pursuant to the consent of the parties. (Doc. # 10, 11).

**Evidence Presented:**

At the time of the administrative hearing on October 13, 2005, plaintiff was fifty-one years of age and obtained a high school education. (Tr. 211). Plaintiff's past relevant work consists of work as a maintenance man and a security guard. (Tr. 211-212, 214-216). Plaintiff also amended his alleged onset date to August 1, 2003. (Tr. 212).

AO72A
(Rev. 8/82)

When questioned about medications, plaintiff testified that he was only taking Aspirin when he had a headache. (Tr. 217). When asked about the medication prescribed by Dr. Floyd to treat his temper problem, plaintiff testified he took the medication as prescribed until he went to a walk-in clinic and was told to stop taking the medication and was switched to a different medication. (Tr. 218). Plaintiff explained the medication Dr. Floyd has started him on was for seizures and that he had not had seizures since he was ten years old. Plaintiff testified that he went back to the walk-in clinic doctor and at that time his medication dosage was reduced. He was then incarcerated and has not taken medication since. (Tr. 218).

When asked why he stopped working in July of 2003, plaintiff testified he was incarcerated for a month without asking his supervisor for a leave of absence and lost his job. (Tr. 219-220). Plaintiff did not know if he would be able to return to work for his previous employer but indicated that if he might go see them again after the hearing to see if he was eligible for re-hire if he were required to stand and walk only four hours out of the day. (Tr. 224).

With regard to his alleged disabling impairments, plaintiff testified the only impairment that kept him from working was a "compressed fracture" of the lower back. (Tr.220). Plaintiff testified he was unable to lift anything heavy because it causes pain. He further explained that standing for a period of time also caused his back to hurt. (Tr. 222). Plaintiff testified that his knees bothered him every now and then when the weather changed. (Tr. 220). Plaintiff testified that he did not have a treating physician and that if he needed treatment he would go to the emergency room or walk-in clinic. (Tr.221).

Plaintiff testified at one time he would become aggressive but that he no longer did. (Tr. 225). Plaintiff testified that he did not have any problems with concentration and that he learned

3

to control his anger after his most recent incarceration for assault and battery of his wife. (Tr. 226).

Mr. Dale Thomas, a vocational expert, testified plaintiff's past relevant work consists of work as a janitor which is considered unskilled, light work; and a security guard which is considered semi-skilled, light work. However since the security guard position could be learned in thirty days, Mr. Thomas opined that it was really an unskilled job. (Tr. 228). After listening to the ALJ's hypothetical question (Tr. 228), Mr. Thomas opined that the hypothetical individual would be able to perform his past relevant work. (Tr. 229). When the additional limitations of being able to remember and carry out only simple but not detailed or complex instructions was added to the hypothetical, Mr. Thomas opined that the hypothetical individual would be able to perform his past relevant work. (Tr. 229). After listening to the third hypothetical question (Tr. 229), Mr. Thomas opined the hypothetical individual would be able to perform his past work as a security guard. (Tr. 230). When question by plaintiff's attorney, Mr. Thomas testified that plaintiff's incarceration would eliminate any potential job as a security guard. (Tr. 230-231).

The medical evidence in this case reflects the following. After complaining of having a difficulty with swallowing food, on April 2, 2002, plaintiff underwent an esophagogastroduodenoscopy plus biopsy and esophageal dilation which revealed a small hiatal hernia, distal reflux esophagitis with mild stenosis, erosive gastritis and duodenitis. (Tr. 135, 137). The doctor prescribed a combination of antireflux therapy and avoidance of the use of anti-inflammatories such as aspirin and nonsteroidal products.

On January 29, 2003, plaintiff visited the emergency room at St. Edward Mercy Medical Center, complaining of back pain from an injury two days prior (Tr. 139-145). On examination,

AO72A
(Rev. 8/82)

Dr. Robert Nowlin, observed that plaintiff's vital signs were normal; his lower extremities were intact; and his straight leg raising tests were normal. (Tr. 140). An x-ray examination of plaintiff's lumbar spine showed that he had a compression fracture at L2. (Tr. 144). Dr. Nowlin prescribed Vicoprofen, advised plaintiff to contact his family doctor, and discharged him in stable condition. (Tr. 140).

On September 29, 2004, plaintiff underwent a consultative general physical examination performed by Dr. Michael R. Westbrook. (Tr. 150-156). At the time of the examination, plaintiff complained of back pain. (Tr. 150). He further reported that his acid reflux and heartburn were relieved with the use of Rolaids, Tums and milk. (Tr. 151). Upon examination, Dr. Westbrook noted plaintiff had full range of motion of his spine and extremities. (Tr. 153-154). He reported no muscle weakness, muscle atrohpy or sensory abnormalities. He did note plaintiff had hammer toes. (Tr. 154). Dr. Westbrook's diagnosis was back pain, hammer toes and post-surgical knee pain. (Tr. 155).

An x-ray dated October 26, 2004, of plaintiff's left knee, revealed chondrocalcinosis of the left medial and lateral menisci and possible underlying calcium pyrophosphate deposition disease/pseudogout. (Tr. 157).

On February 7, 2005, plaintiff presented to Dr. R. Floyd's office. (Tr. 170). Plaintiff reported he sustained a head trauma when he was eight and was unconscious for thirty-six days. Plaintiff's wife also reported that plaintiff could be fine and then "just loose it." Dr. Floyd noted plaintiff had a flat mood and affect and poor memory. Plaintiff was diagnsoed with intermittent explosive disorder and started on Neurontin.

AO72A
(Rev. 8/82)

Plaintiff returned to Dr. Floyd's office on March 7, 2005. (Tr. 169). He reported that his temper was better and controlled. Plaintiff's wife also sent a note indicating plaintiff was doing "some better." Dr. Floyd diagnosed plaintiff with intermittent explosive disorder and increased his Neurontin dosage. Plaintiff was to return for a follow-up appointment on April 11, 2005, but did not keep the appointment. (Tr. 169).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A),

1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984). While an ALJ may not discount a claimant's

7

subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id.* As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir.2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

Plaintiff alleges he is unable to work due to back pain. He testified at the October of 2005, administrative hearing that his back pain was the main reason he was unable to work. (Tr. 220). A review of the medical evidence reveals plaintiff did sustain an injury to his back in January fo 2003, when he was lifting the tongue of a trailer. (Tr. 140). X-rays taken revealed a lumbar compression fracture. Plaintiff was given a prescription for Vicoprofen and told to follow-up with his family doctor. (Tr. 140). The record fails to show plaintiff followed-up with his family physician or sought any type of treatment for his back pain until he was seen by Dr. Westbrook for a consultative general physical examination in September of 2004. *See Guilliam v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (failure to follow a recommended course of treatment weighs against credibility); *See Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment inconsistent with allegations of pain). Plaintiff also testified that he was not taking any pain medication for his back pain. *See Haynes v. Shalala*, 26 F.3d

8

812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain); *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (failure to take pain medication is relevant to the credibility determination). Furthermore, at the consultative examination in September of 2004, Dr. Westbrook found plaintiff had full range of motion of his spine and extremities and had no signs of muscle weakness, muscle atrophy or sensory abnormalities.

There is also medical evidence indicating plaintiff has had problems with reflux. However, plaintiff reported to Dr. Westbrook that his problem was relieved with the use of Rolaids, Tums and milk. *See Estes v. Barnhart,* 275 F.3d 722, 725 (8th Cir. 2002) (citations omitted).

With regard to plaintiff's alleged knee problems, while x-ray evidence does show plaintiff has chondrocalcinosis of the left medial and lateral menisci and possible underlying calcium pyrophosphate deposition disease/pseudogout, there is no indication that he has sought treatment for knee pain during the relevant time period. Plaintiff also testified in October of 2005, that his knees only bothered him every now and then and when the weather changed. (Tr.220).

With regard to plaintiff's intermittent explosive disorder, plaintiff argues the ALJ erred in not sending plaintiff to a consultative psychiatric or psychological evaluation. The ALJ is only required to send plaintiff for a consultative evaluation when there is not substantial evidence in the record to make an informed decision. *Freeman v. Apfel,* 208 F.3d 687, 692 (8th Cir.2000) (ALJ only must order consultative examination when it is necessary for an informed decision). In the present case, the ALJ pointed out that Dr. Floyd reported plaintiff responded well to medication, that Dr. Westbrook found no evidence of psychosis or serious mood disorder, that

plaintiff had not seen or been referred to a psychiatrist or psychologist by any treating or examining physician, and that plaintiff testified he no longer had a temper problem and that his concentration ability was fine. We find the record contains substantial evidence to support the ALJ's RFC determination with regard to plaintiff's mental abilities.

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities. In a Supplemental Interview Outline dated May 14, 2004, plaintiff indicated he is able to take care of his personal needs, take out the trash, do home repairs, wash the car, shop for clothes, drive, walk for errands and exercise, attend church, watch television, listen to the radio, read and visit with friends and family. (Tr. 100-101). This level of activity belies plaintiff's complaints of pain and limitation and the Eighth Circuit has consistently held that the ability to perform such activities contradicts a plaintiff's subjective allegations of disabling pain. See *Cruze v. Chater,* 85 F.3d 1320, 1324 (8th Cir.1996) (mowed lawn, shopped, odds jobs and visits town); *See Hutton v. Apfel*, 175 F.3d 651, 654-655 (8th Cir. 1999) (holding ALJ's rejection of claimant's application supported by substantial evidence where daily activities– making breakfast, washing dishes and clothes, visiting friends, watching television and driving-were inconsistent with claim of total disability); *See Polaski* at 1322.

Therefore, although it is clear that plaintiff suffers with some degree of pain, he has not established that he is unable to engage in any gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily

activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We will next discuss the ALJ's RFC determination. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In the present case, the ALJ determined plaintiff retained the RFC to perform light work. Plaintiff's capacity to perform this level of work is further supported by the fact that plaintiff's examining physicians placed no restrictions on his activities. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Therefore, based on all of the evidence contained in the file, we find substantial evidence supporting his RFC determination.

AO72A
(Rev. 8/82)

Next, we look to the ALJ's determination that plaintiff could perform substantial gainful employment within the national economy. We find that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Accordingly, we find that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that plaintiff is not disabled as he is able to perform his past relevant work as a maintenance worker and an unarmed security guard. *See Pickney*, 96 F.3d at 296 (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence). We note that the vocational expert testified plaintiff would not be eligible to work as a security guard based on his criminal record; however, based on his physical and mental capabilities the record establishes plaintiff is able to perform the actual job duties of this past relevant job. *Moad v. Massanari*, 260 F.3d 887, 891 (8th Cir. 2001)(citations omitted).

## **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 29th day of September 2006.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)